UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSOCIATION OF IRRITATED RESIDENTS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>VITRO FLAT GLASS, LLC,<br><br>　　　　　Defendant. | No. 1:19-cv-01512-DAD-BAM<br><br>ORDER APPROVING CONSENT DECREE<br><br>(Doc. No. 33) |

This matter is before the court on the parties' joint request to enter the proposed consent decree, filed on January 11, 2021. (Doc. No. 33.) Having reviewed and considered the submissions of the parties, the court determines this matter is suitable for resolution without oral argument. *See* L.R. 230(g). For the reasons set forth below, the court will grant the parties' joint request and approve the consent decree.

This suit arises from a complaint for declaratory and injunctive relief pursuant to the citizen suit enforcement provision of the Federal Clean Air Act, 42 U.S.C. §§ 7401, *et seq*. ("Clean Air Act" or "CAA"). (Doc. No. 1.) Plaintiff Association of Irritated Residents ("plaintiff") is a California non-profit corporation. (*Id*. at ¶ 6.) Defendant Vitro Flat Glass LLC ("defendant") is a Pennsylvania corporation that operates a facility located in Fresno, California. (*Id.* at ¶¶ 1, 8.)

1

Prior to filing suit, plaintiff issued a sixty-day notice letter on July 16, 2019 to defendant and state and federal agencies to inform them of defendant's alleged violations of the CAA, the California State Implementation Plan, and the facility's permit under Title V of the CAA. (*Id.* at ¶ 1, 4.) Neither the EPA nor the State of California commenced an action within sixty days regarding the alleged violations, thus permitting plaintiff to file suit in this court. *See* 42 U.S.C. § 7604(b).[1] On October 24, 2019, plaintiff filed a complaint in this action, alleging that defendant had failed to maintain and/or record continuous emission monitoring system ("CEMS") data in violation of the CAA, and that the CEMS has not been properly installed and/or maintained and does not meet the performance specifications required by the Title V permit. (*Id.* at ¶¶ 37–42.)

On November 19, 2020, the parties filed a notice of settlement stating that they reached a proposed consent decree resolving the claims in this action. (Doc. No. 31.) On January 8, 2021, the United States Department of Justice, Environmental and Natural Resources Division ("United States") provided to counsel of record a letter stating that it reviewed the proposed consent decree in this action and does not object to the proposed consent decree's entry by the court. (*See* Doc. No. 33, Ex. B.) On January 11, 2021, the parties filed a request for entry of the proposed consent decree. (Doc. No. 33.)

As part of the proposed consent decree, defendant is required to purchase and operate a permit-compliant replacement CEMS. (Doc. No. 33, Ex. A at ¶¶ 13–16.) Defendant must notify plaintiff that the replacement CEMS has been installed and of the date that it began operation. (*Id.* at ¶ 16.) Upon the start of the replacement CEMS' operation, defendant must implement a quality assurance/quality control plan subject to various requirements set forth in the proposed consent decree. (*Id.* at ¶¶ 17–18.) Defendant must provide a copy of the plan to plaintiff within seven days of the start of the replacement CEMS' operation. (*Id.* at ¶ 18.) No later than thirty days after the replacement CEMS begins operation, defendant must develop and implement an employee training program that meets various requirements set forth in the proposed consent

---

[1] The Clean Air Act explicitly "allows any person to bring a lawsuit in federal court against any person who violates an 'emission standard or limitation.'" *Glob. Cmty. Monitor v. Mammoth Pac., L.P.*, No. 2:14-cv-01612-MCE, 2015 WL 2235815, at *1 (E.D. Cal. May 11, 2015) (citing 42 U.S.C. § 7604); *see also id.* at *1 n.1 (defining "emission standard or limitation").

decree and ensures a sufficient number of employees can oversee activities related to the CEMS' compliance. (*Id.* at ¶ 19.) The proposed consent decree also requires that defendant (1) submit an action plan to plaintiff for each CEMs deviation that occurs more than 60 days after the replacement CEMS begins operating, along with a $500.00 payment to defray the cost to plaintiff of reviewing the action plan; (2) cooperate with plaintiff conducting a site inspection during the term of the proposed consent decree for the purpose of ensuring compliance with the proposed consent decree; (3) notify and submit to plaintiff various compliance and monitoring documents set forth in the proposed consent decree; and (4) partially defray costs associated with plaintiff's monitoring of defendant's compliance with the proposed consent decree by making a payment of $5,000.00 to Aqua Terra Aeris Law Group LLP. (*Id.* at ¶¶ 20–24.)

Additionally, the proposed consent decree provides that defendant will make a payment of $35,000.00 to the Rose Foundation for Communities and the Environment, which will be used for projects aimed at reducing air pollution and the impact of air pollution in the San Joaquin Valley. (*Id.* at ¶ 25.) Defendant must pay $75,000.00 to plaintiff to reimburse plaintiff for its investigation fees and costs, expert and consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit and negotiating a resolution. (*Id.* at ¶ 26.) The proposed consent decree also sets forth various stipulated payments that serve as penalties for defendant's delays in complying with the proposed consent decree, which must be paid to the Rose Foundation. (*Id.* at ¶ 27–28.) Finally, defendant must pay interest on any payments, fees, or costs owed to plaintiff under the proposed consent decree that plaintiff has not received within thirty days of the due date. (*Id.* at ¶ 29.)

"A consent decree is 'essentially a settlement agreement subject to continued judicial policing.'" *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)). Thus, before approving a consent decree, a district court must independently determine that the proposed agreement is "fundamentally fair, adequate, and reasonable" and "conform[s] to applicable laws." *Id.*; *see also Arizona v. City of Tucson*, 761 F.3d 1005, 1010–14 (9th Cir. 2014). "[T]he district court must balance several factors, including but not limited to: strength of the plaintiffs' case; risk, expense, complexity and possible duration

3

of continued litigation; relief offered in settlement; extent of discovery already completed; stage of proceedings; experience and views of counsel; governmental participation; and reaction of the class members." *Davis v. City & County of San Francisco*, 890 F.2d 1438, 1445 (9th Cir. 1989) (citing *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). Where a government agency is involved in the negotiation of the proposed consent decree, there is a presumption in favor of the decree's enforceability, and courts should pay deference to the agency's judgment. *See S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984).

Given the above, the court concludes this consent decree will provide substantial relief to the parties. The consent decree as proposed is the product of a fair arms-length negotiation process and is fair, reasonable, and adequate, and not illegal, collusive, or against the public interest. Though a government agency was not involved in the negotiation of the proposed consent decree, the United States' comments regarding and non-opposition to the court's approval further indicate that the proposed consent decree is an appropriate resolution of this case. *See Pennsylvania Envtl. Def. Found. v. Bellefonte Borough*, 718 F. Supp. 431, 435 (M.D. Pa. 1989) (considering comments from the United States, a nonparty, in approving consent decree in a citizen suit action brought under the federal Clean Water Act); *Ass'n of Irritated Residents v. Fred Schakel Dairy*, No. 1:05-cv-00707-OWW-SMS, 2008 WL 850136, at *7 (E.D. Cal. Mar. 28, 2008) (explaining that courts have "noted that the CWA citizen suit provision is similar to the CAA citizen suit provision and relied on CAA cases as well as CWA cases for [certain] determination[s]").

For these reasons:

1. Plaintiff's request for entry of consent decree (Doc. No. 33) is granted;
2. The parties' stipulation and proposed consent decree (Doc. No. 33, Ex. A) is approved;

/////
/////
/////

3. The court retains continuing jurisdiction to enforce the consent decree in this action for the duration of the decree (*see* Doc. No. 33, Ex. A at ¶¶ 11–12); and

4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  **February 19, 2021**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE